UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vincent Ofor,                                             Civil No. 09-1402 (PAM/JJG)

                         Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

Ocwen Loan Servicing, LLC,
Aames Funding Corporation,
U.S. Bank N.A;

                         Defendants.
_____

This matter was tried to the Court on May 3 and 4, 2010.  At issue are Plaintiff's claims against the only remaining Defendant, U.S. Bank, N.A.  For the reasons that follow, the Court finds in favor of U.S. Bank on all of Plaintiff's claims.

**BACKGROUND**

This case arises out of a mortgage refinancing transaction on residential real property. In 2005, Plaintiff Vincent Ofor decided to refinance the two mortgages outstanding on his home in New Brighton, Minnesota.  He engaged the services of a company called Mortgage One to secure a new mortgage, and Ken Lindsay, a mortgage broker with Mortgage One, did so.  Mortgage One is no longer a viable entity and is not a party to this lawsuit, and Mr. Lindsay has apparently left Minnesota and did not testify either by deposition or at trial.

Mr. Ofor testified that he believed that the refinancing would be accomplished with a single loan of approximately $260,000, and that his monthly payment would be $1,800 per month.  (Trial Tr. Day 1 at 124.)  At the time of the refinancing, the Ofors owed more than

$218,000 in the original two mortgages on their home.  (Trial Ex. 1 at 1, ln. 104-05.)  They also planned to pay off consumer loans, student loans, and miscellaneous judgments with the proceeds of the refinanced mortgage.  These expenses totaled more than $24,000.  (Id. at 2, ln. 1303-05.)  In addition, the Ofors wanted to receive cash back from the transaction, and did in fact receive $18,643.04 in cash after the refinancing.  (Id. at 1, ln. 303.)  Thus, the Ofors needed to receive, and did receive, more than $270,000 in direct benefits from the refinanced mortgages.[1]

Mr. Ofor now contends that the refinanced loans did not comport with his understanding of what the transaction would be.  Instead of a single loan of $260,000 (which, as noted above, would not have been sufficient to provide the Ofors with the benefits they wished to derive from the transaction), the refinancing took the form of two different loans, one for $220,000 and one for $55,000.  The $55,000 loan was a balloon loan, requiring minimal monthly payments for the first 15 years, then a single balloon payment of more than $47,000 in 2020.  The monthly payment for the two loans was $2,200 per month.  The closing for the new mortgage was scheduled for October 24, 2005.  However, Mr. Ofor left Minnesota in early October 2005 in order to take a temporary job in New York.  He did not return to Minnesota until late December 2005.

To allow the transaction to go forward, Mr. Ofor signed a power of attorney that

---

[1] Mr. Ofor testified that, in the summer or fall of 2005, a different bank valued his home at $239,000, and refused to give him a new mortgage on the home.  Mr. Lindsay, however, managed to secure a valuation of $275,000, the amount of the refinanced mortgages.  Mr. Ofor did not question this higher valuation.  (Trial Tr. Day 1 at 103-04.)

permitted his then-wife, Lisa Ofor, to sign the closing documents on his behalf.  He faxed this document to Minnesota, where it was notarized and entered into the closing file.  (Trial Ex. 8.)  When the mortgage and deed were recorded by the Ramsey County Recorder, the power of attorney was included in the recorded mortgage package.  As will be discussed in more detail below, Minnesota law does not allow a notary to notarize a document bearing a faxed signature, nor does it allow a document with a non-original signature to be recorded. Mr. Ofor testified, however, that he intended his wife to sign all necessary closing documents on his behalf, and did not ask her or expect her to read or check those documents in any way. (Trial Tr. Day 1 at 99.)  Indeed, Mr. Ofor expressed skepticism that his wife would have been able to understand the closing documents had she read them.  (<u>Id.</u>)

Mrs. Ofor testified at the trial that Mr. Ofor was on the phone during the entire closing, that Mr. Lindsay explained the terms of the mortgages to him, and that Mr. Lindsay clearly indicated that there were two mortgages, not one.  (Trial Tr. Day 2 at 29.)  Mr. Ofor vehemently denied attending the closing via speakerphone, contending that he was at work during the time the closing took place. (<u>Id.</u> at 54.)

Mr. Ofor claims that he did not notice the discrepancy between his understanding of the refinancing transaction and the actual transaction until many months after the closing. He paid the monthly payment on the two refinanced mortgages until sometime in the fall of 2006.  He has not made a mortgage payment since that time, although he continues to reside in the home.

At some point thereafter, the mortgage holder instituted foreclosure proceedings,

although Mr. Ofor did not remember when he first received notice of the mortgage holder's intent to foreclose.  With the assistance of his trial counsel, he attempted to rescind the loan in October 2007, contending that he did not receive the required disclosures under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.  (Trial Ex. 25.)  This rescission letter was sent to a Mr. Lawrence Zielke at Shariro, Nordmeyer & Zielke in Edina, Minnesota.  There was no testimony or evidence explaining Mr. Zielke's connection to this matter.  In early November, Mr. Ofor sent another letter purporting to rescind the loans, this time writing to the initial mortgage holder, Aames Funding Corp. ("Aames").[2]  (Trial Ex. 26.)  There is no evidence in the record that Aames responded to this letter.  In June 2008, Mr. Ofor wrote to U.S. Bank,[3] Aames, and Ocwen Financial Corporation, which was the servicer for the mortgages.  (Trial Ex. 27.)  This letter again purported to rescind the mortgages because of TILA violations.  In July 2008, Ocwen denied Mr. Ofor's requested rescission.  (Trial Ex. 41.)

A sheriff's sale of Mr. Ofor's home was scheduled for December 11, 2008.  Mr. Ofor filed the instant Complaint in state court on December 10, 2008, and also filed a notice of lis pendens that day.  Mr. Ofor did not ask the state court for emergency relief to enjoin the sale, and the sale went forward on December 11, 2008.  U.S. Bank purchased the home at that sale.  None of the Defendants was served in this matter until May 2009.  Mr. Ofor did not

[2] Aames has not appeared in this matter, and is apparently in bankruptcy proceedings.

[3] A mortgage-backed securities trust, for which U.S. Bank acts as trustee, acquired the Ofor's refinanced mortgages shortly after the closing.

4

exercise his statutory right to redeem after the sheriff's sale, and that right expired in June 2009.  See Minn. Stat. § 580.001 et seq.

In Count I of the Complaint, Mr. Ofor claims that there was no contract between him and Aames.  Count II contends that the various entities that handled his loan violated TILA. In particular, Mr. Ofor contends that Aames failed to make the disclosures required by TILA, thus giving Mr. Ofor a three-year right to rescind.  He claims that the failure to grant him rescission when he requested it violated TILA.   U.S. Bank is not specifically mentioned in any of the Counts of the Complaint, and indeed U.S. Bank disputes whether Count I applies to it.

## DISCUSSION

### A.    Count I

Count I of the Complaint alleges that there was no contract between Mr. Ofor and the mortgage holder and thus no basis for the foreclosure.  Mr. Ofor presents two legal theories in support of this Count.  First, he contends that the power of attorney was invalid because it was not properly notarized, and that therefore any transaction based on the invalid power of attorney is void ab initio.  Second, he contends that the foreclosure is invalid because it is based on a faxed power of attorney.  Under Minnesota law, a non-original signature is not recordable.  Minn. Stat. § 507.24.  Mr. Ofor contends that, despite this provision, the faxed copy of the power of attorney was recorded in support of the refinancing transaction.  To be entitled to foreclose on the property, the lender must have a properly recorded mortgage.  Id. § 580.02(3).  Mr. Ofor claims that whether or not the power of attorney was valid, it was not

subject to recording under Minnesota law and therefore could not provide justification for the foreclosure.

### 1.   Validity of Power of Attorney

Mr. Ofor argues that Minnesota law requires that a power of attorney be notarized to be valid. This is not the law. Rather, Minnesota law provides that a power of attorney "is validly executed when it is dated and signed by the principal . . . ." Minn. Stat. § 523.01. The notary requirement on which Mr. Ofor so heavily relies applies only to powers of attorney that are not signed by the principal or that are signed by a mark rather than a written signature. Id. Thus, the faxed copy of the power of attorney was valid under Minnesota law.

This conclusion is bolstered by Mr. Ofor's own testimony. He testified that he knowingly and willingly signed the power of attorney, that he intended to give his wife the authority to sign the refinancing transaction documents on his behalf, and that he wanted the transaction to go forward even though he was not present. Thus, his reliance on cases in which a power of attorney is procured by fraud are wholly inapposite. There was no testimony whatsoever that the power of attorney was the product of fraud. Rather, under both Minnesota law and the common law, the power of attorney on which the refinancing transaction was based was undisputedly valid.

### 2.   Validity of Foreclosure Action

It is a separate question, however, whether the foreclosure itself is valid. This is because, as noted, Minnesota law requires that a foreclosure action be based on a properly recorded mortgage, and to be properly recorded, the mortgage documents must contain

6

original signatures. Mr. Ofor contends that the recorder recorded the faxed copy of the power of attorney. There is no evidence in the record to support this contention, however.

It is Mr. Ofor's burden to establish by a preponderance of the evidence that the power of attorney recorded on November 7, 2005, was the faxed copy that was entered into evidence during the trial as Exhibit 8. He utterly failed to meet this burden. Mr. Ofor did not provide the Court with a certified copy of the documents that were recorded by the Ramsey County Recorder. The only evidence in the record is a fax from the title company to the Recorder attaching a copy of the power of attorney for recording. (Trial Ex. 33.) The fax cover sheet indicates that the document contained original signatures, and indeed the power of attorney sent to the Recorder is more legible than the admittedly faxed copy of the power of attorney in Exhibit 8. Mr. Ofor asks the Court to assume that the Recorder must have recorded a faxed copy of the power of attorney because that is the only copy in the record. It is possible, however, that between the date of closing and the date of recording, Mr. Ofor mailed the original power of attorney to his wife or to Mr. Lindsay, and therefore that it was the original power of attorney that was recorded. There was simply no evidence adduced at trial to establish whether the recorded power of attorney was in fact the faxed copy.

Mr. Ofor's breach of contract claim fails.

**B.     Count II**

Count II raises two different claims under TILA. The first is a claim that the three-year right of rescission, rather than the usual three-day rescission period, applies. 15 U.S.C.

7

§ 1635; 12 C.F.R. § 226.23(a)(3).  The second is a claim that the lender wrongfully refused to cancel the mortgage after receiving Mr. Ofor's rescission notice.  15 U.S.C. § 1635(b).

TILA provides that borrower with a loan secured by a "principal dwelling" has an unconditional three-day right to rescind the loan.  Id. § 1635(a).  TILA also requires lenders to disclose "clearly and conspicuously" the borrower's rights under TILA.  Those disclosures must include the identity of the creditor; the amount financed and an itemization of that amount; the prepaid finance charge; the finance charge; the annual percentage rate, and, if applicable, that the loan is a variable-rate loan and a "statement that variable-rate disclosures have been provided earlier;" the "number, amounts, and timing of payments scheduled to repay the obligation;" the total of payments; and the effect of prepayment and late payment. 12 C.F.R. § 226.18.  If the required disclosures are not made, the borrower's right to rescind is extended to three years.  Id. § 226.23(a)(3).  In this case, there is no dispute that the disclosures provided to Mrs. Ofor at the closing accurately described all material terms of the new mortgages.

Mr. Ofor's TILA claim is essentially two-fold.  He contends that, because the power of attorney was not properly notarized, it could not have given Mrs. Ofor the power to sign the new mortgages on his behalf and, therefore, he did not sign the mortgages nor receive any of the required TILA disclosures.  Thus, according to Mr. Ofor, he had a three-year right to rescind and properly exercised that right in June 2008.  He also contends that Mr. Lindsay's representations regarding the amount of the monthly payment essentially superceded the written disclosures, rendering those disclosures not "clear[] and conspicuous[]" within the

meaning of the statute and giving rise to a three-year right of rescission.

1.      Power of Attorney

As discussed previously, the power of attorney that gave Mrs. Ofor the right to sign the refinancing transaction documents on her husband's behalf was valid.  Her receipt of the required TILA disclosure statements can therefore be imputed to Mr. Ofor, and his claim that he did not receive the disclosures is without merit.

2.      TILA disclosures

In essence, Mr. Ofor's TILA claim is that a broker's prior representations that contradict the required written disclosures may render those disclosures invalid under TILA, thus triggering the three-year rescission period.  Whether such a claim is cognizable under TILA, however, is not clear.  See, e.g., Nieskens v. Peter, No. 09-2085, 2010 WL 1626902, at *3 (D. Minn. Apr. 21, 2010) (Doty, J.) (finding that oral statements of broker "did not subvert the plain language of the creditor's disclosures" under TILA).   Here, in any event, the record is ambiguous as to whether any contradictory disclosures were actually made to Mr. Ofor.  The written evidence, in the form of a loan worksheet prepared well before the closing, does not clearly indicate that the terms Mr. Lindsay promised differed substantially from the terms that were eventually contained in the loans.  (Trial Ex. 6.)  That worksheet indicates that the Ofors' total monthly payment after refinancing would be $2,115, amounting to a $40 per month savings from their pre-refinancing payment of $2,155.  Mr. Ofor testified that he understood that the total monthly payment on the loan worksheet was to include all of his bills, and that Mr. Lindsay told him that the monthly mortgage payment

after refinancing would be only $1,800. His testimony is not altogether credible, however, and is contradicted by other evidence, not the least of which is the fact that the refinanced mortgages paid off many of the other bills the Ofors had incurred prior to the refinancing.

It is difficult to imagine that Mr. Ofor, who holds a bachelor's degree in business administration, believed that he would have a lower monthly payment when the loan for which he was applying was larger than his pre-refinancing mortgages. Moreover, Mrs. Ofor testified that Mr. Lindsay explained to Mr. Ofor the terms of the mortgages she signed on his behalf. Her testimony was far more credible than was Mr. Ofor's insistence that he did not participate in the closing. Finally, there is no question that Mr. Ofor paid the refinanced mortgages for more than six months. If the terms of the new loans were so different than what he expected, he could have challenged those terms much earlier than he did.

The Court finds that Mr. Ofor has failed to establish by a preponderance of the evidence that the terms of the loan to which he agreed were substantially and materially different from the terms of the loans in the refinancing transaction. His TILA claim therefore fails.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's claims are **DISMISSED with prejudice**; and

2.      Because the lawsuit is dismissed, the Notice of Lis Pendens recorded as Document No. 4130989 with the Ramsey County Recorder is hereby **DISCHARGED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   May 24, 2010

                                                  s/Paul A. Magnuson
                                                  Paul A. Magnuson
                                                  United States District Court Judge

11